44

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Case: 4:22-cv-10175
Judge: Davis, Stephanie Dawkins
MJ: Patti, Anthony P.
Filed: 01-27-2022 At 03:43 PM
CMP TAWFIQ V. HINES (NA)

*(to be filled in by the Clerk's Office)*

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Jury Trial: ☐ Yes ☑ No
*(check one)*

Dr. Neri Tawfiq

v.

Mr. James Hines

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

# Complaint for a Civil Case

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Dr. Neri TawfiQ |
| Street Address | P.O. BOX 3678 [Homeless Live in Car] |
| City and County | Sagnaw |
| State and Zip Code | MI / 48605 |
| Telephone Number | 989-988-1114 |
| E-mail Address | Neri.TawfiQ@yahoo.com |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Mr. James Hines |
| Job or Title (if known) | Chief of Staff |
| Street Address | 1500 Weiss St [Aleda E Lutz VA] |
| City and County | Sagnaw |
| State and Zip Code | MI / 48602 |
| Telephone Number | 989-497-2500 |
| E-mail Address (if known) | James.Hines@va.gov |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title (if known) | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address (if known) | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title (if known) | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address (if known) | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title (if known) | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address (if known) | |

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A. If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Federal VA Directive 5021

**B. If the Basis for Jurisdiction Is Diversity of Citizenship**

1. The Plaintiff(s)

a. If the plaintiff is an individual
The plaintiff, *(name)* ______________________,
is a citizen of the State of *(name)* ______________.

b. If the plaintiff is a corporation
The plaintiff, *(name)* ______________________,
is incorporated under the laws of the State of *(name)*
______________, and has its principal place of business in the State of *(name)* ______________.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

a. If the defendant is an individual
The defendant, *(name)* ______________, is a citizen of the State of *(name)* ______________. *Or* is a citizen of *(foreign nation)* ______________.

b. If the defendant is a corporation
The defendant, *(name)* ______________, is incorporated under the laws of the State of *(name)* ______________, and has its principal place of business in the State of *(name)* ______________. *Or* is incorporated under the laws of *(foreign nation)* ______________, and has its principal place of business in *(name)* ______________.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*: 3rd Mental Pain / mental suffering $875,000. 1st Fabrication of termination 2nd persistent Harassment that Endanger my life and still current as of 01/27/2022.

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

1st Fabrication of termination / Fabrication of behavioral violent acts that I did not perform, that resulted in VA-police Harassment indangering my life even as to current 01/27/22.

2nd slandering my name, that cost me a substantially amount of jobs, that I keep lossing, due to the fact that the category / Red Flag is Nation wide on all of the VA in United States of America. The flag was a complete fabrication to make me seem as a violent black man.

3rd Mental Pain & Mental suffering

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Grant the law sue of
$875,000
1st Mental Pain/Mental Suffering.
2nd Fabrication leading to termination/left me homeless
3rd Persistent Harassment even to current 01/27/22
4th Defamation of violent behavioral acts
that have cost me to loss over 10
high paying jobs.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 01/27/, 20 22.

Signature of Plaintiff [signature]

Printed Name of Plaintiff Tauriq, Neri

MIED ProSe 1 (Rev 5/16) Complaint for a Civil Case

**Additional Information:**

* Please note that I am not sueing aleda E. lute Veteran affairs.

* I am sueing Mr. James Hines Directly!!!

7



VA
U.S. Department of Veterans Affairs
VA Healthcare System - Serving Indiana, Michigan and Ohio

**Veterans Integrated Service Network 10**
11500 Northlake Drive, Suite 200
Cincinnati, Ohio 45249

October 27, 2021

**RE: FOIA Request 22-00602-F**

Dr. Neri Tawfiq
Neri_tawfiq@yahoo.com
Neri.tawfiq@outlook.com

Dear Dr. Tawfiq:

This letter is the initial agency decision on your 10/24/2021, request under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, submitted to the VHA 10N10 - VA Healthcare System Serving Indiana, Michigan, and Ohio FOIA Office for a copy of the following information:

1. Documents of requestor, as a patient at the Aleda E. Lutz Veterans Affairs Medical Center, Saginaw, MI from November 22, 2020-March 22, 2021.
2. Documents pertaining to the requestor's history of verbal aggression, use of profanity, yelling and demanding remarks from November 22, 2020-March 22, 2021.
3. Documents pertaining to the requestor's history of inappropriate threats from November 22, 2020-March 22, 2021

Line Item 1 of requestor displayed as a patient at the Aleda E. Lutz Veterans Affairs Medical Center (VAMC), Saginaw, MI from November 22, 2020-March 22, 2021, produced one document displaying a Community Care Consult entered for a non-VA visit.

After conducting a reasonable search, we have concluded that the Aleda E. Lutz VAMC, Saginaw, MI, does not have records responsive to your request for Line Items #2 and #3. Courts have determined the reasonableness of an agency's search can depend on whether the agency properly determined where responsive records were likely to be found and searched those locations. [*See* Iacoe v. IRS, No. 98-C-0466, 1999 WL 675322, at *4 (E.D. Wis. July 23, 1999) (recognizing that agency "diligently searched for the records requested in those places where [agency] expected they could be located")].

Record search inquiries were made to the appropriate office(s). The Disruptive Behavior Coordinator and former Chief of Staff conducted a search for documents responsive to Line Items #2 & #3 your request for the date range of November 22, 2020-March 22, 2021. The Disruptive Behavior Coordinator stated that any records they had were given to the Saginaw VAMC FOIA Officer for the previous FOIA request number 21-09124-F. The VISN 10 FOIA Officer conducted a search of the previously disclosed records for FOIA request 21-09124-F by utilizing the search criteria for Line Items #2 & #3, as displayed below.

Line Item 2: Documents pertaining to the requestor's history of verbal aggression, use of profanity, yelling and demanding remarks were searched with the search criteria of the date range of November 22, 2020-March 22, 2021 and the text terms of "profanity," "yelling," and "demanding." This search concluded "no records" found.

Line Item 3: Documents pertaining to the requestor's history of inappropriate threats were searched with the search criteria of the date range of November 22, 2020-March 22, 2021 and the text terms of "inappropriate" and "threat." This search concluded "no records" found.

At the conclusion of the search, a "no records" response was provided for responsive records to your request Line Item 2 and Line Item 3.

Please be advised that you may appeal the "no records" response to:

Office of the General Counsel (024)
Department of Veterans Affairs
810 Vermont Avenue, N.W.
Washington, D.C. 20420
Email: ogcfoiaappeals@va.gov

If you should choose to file an appeal, your appeal must be postmarked or electronically transmitted no later than ninety (90) calendar days from the date of this letter. Please include a copy of this letter with your written appeal and clearly state why you disagree with the determinations set forth in this response.

You may also seek assistance and/or dispute resolution services for any other aspect of your FOIA request from VHA's FOIA Public Liaison and/or Office of Government Information Services (OGIS) as provided below:

VHA FOIA Public Liaison:
Email Address: vhafoia2@va.gov
Phone Number: (877) 461-5038

Office of Government Information Services (OGIS)
Email: ogis@nara.gov
Fax: (202) 741-5769

Mailing address:
Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road
College Park, MD 20740-6001

Thank you for your interest in VA. If you have any further questions, please feel free to contact me at (734) 968-0125 or via email at VISN10VAFOIA@va.gov.

Sincerely,

Julie A. Lowery, MHA, RHIA

VISN 10 FOIA Officer
VA Healthcare System Serving
Indiana, Michigan, and Ohio FOIA
Office

Expanded Profile Oct 25, 2021@09 10 19 Page: 1 of 5

Patient TAWFIQ,NERI MANASSAH (4372) Outpatient

Appointment # 1 Clinic: COM CARE-EMERGENCY DEPT

*** Appointment Demographics ***

Name TAWFIQ,NERI MANASSAH H Clinic: **COM CARE-EMERGENCY DEPT**

ID: 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 **Date/Time: JAN 19, 2021@09:30**

Status NON-COUNT

Purpose of Vst : SCHEDULED

Length of Appt 30 Appt Type REGULAR

Lab: Elig of Appt SERVICE CONNECTED 50% to

X ray Overbook OVERBOOK

EKG: Collateral Appt: NO

Other HSRM, PID=**JAN 26, 2021 PER CONSULT, PROVIDER COVENANT MEDICAL CENTER**

Enrolled in this clinic NO

*** Appointment Event Log ***

| Event | Date | User |
|---|---|---|
| ----- | ---- | ---- |
| Appt Made | **JAN 20, 2021@14:29:57** | |
| Check In | | |
| Check Out | | |
| Check Out Entered | | |
| No Show/Cancel | | |

Checked Out

Cancel Reason:

Cancel Remark

Rebooked Date:

*** Clinic Wait Time Information ***

Request type Unknown

'Next Available' Type

CID/Preferred date JAN 19, 2021

Follow-up visit: NO (computed)

Clinic Wait Time1: 0 days

Clinic Wait Time2: 0 days

NOTE Clinic Wait Time1 represents the difference between the date the appointment was entered and the date it was performed Clinic Wait Time2 represents the difference between the 'CID/Preferred date' and the date the appointment was performed.

*** Patient Information ***

Date of Birth JUL 28, 1983 ID: 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

Sex MALE Marital Status NEVER MARRIED

Religious Pref JEHOVAH'S WITNESSES

Primary Elig SC, 50% TO 100% POS PERSIAN GULF WAR

Address: Phone (989)988 1114

PO BOX 3678 Cell Phone (989)988-1114

SAGINAW, MICHIGAN 48605 3678 Pager # UNANSWERED

UNITED STATES

EMAIL ADDRESS NERI_TAWFIQ@YAHOO COM

Radiation Exposure NO Status: NO INPT./LOD ACT

Prisoner of War: NO Last Admit/Lodger Date

AO Exp/Loc NO Last Disch /Lodger Date

Combat Veteran YES Combat Veteran End Date JUL 17, 2013

PROJ 112/SHAD NO SW Asia Conditions NO

22-00602-+F 3 of 3

*** Check Out ***

No check out information.



U.S. Department of Veterans Affairs

Aleda E. Lutz VA Medical Center
1500 Weiss Street
Saginaw, MI 48602
www.saginaw.va.gov

04/01/2021

In Reply Refer To: 655/116

<<<*Certified Mail*>>>
NERI MANASSAH HAMID TAWFIQ
107 SOUTH WASHINGTON AVE APT B412
SAGINAW, MI 48607

Dear Neri Manassah Hamid Tawfiq,

In accordance with Veterans Health Administration Directive 2010-053, National Patient Record Flags, and Medical Center Policy 116-14 *Management of Disruptive Behavior / Incorporating National Patient Record Flags*, the Medical Center Director is responsible for ensuring employees, volunteers, and patients are provided with a safe environment to work and/or receive health care. One mechanism for promoting staff and Veteran safety is the Disruptive Behavior Committee (DBC). The DBC reviews situations of concern regarding patient and staff safety secondary to disruptive behaviors.

Given this background, it is important to share with you that the DBC met on 03/31/2021 and determined that behavior on 03/23/2021 raises legitimate concerns regarding the safety of the staff who serve you and/or those that visit/serve within our facilities. Specifically you went to the pharmacy office banging on the door to speak to your former supervisors; attempted multiple times to contact your former colleagues and supervisors, for reasons unrelated to your medical care. This behavior has caused concern among the pharmacy staff regarding their personal safety.

Consequently, it is determined that an alert known as a **Category I Behavioral Patient Record Flag** will be activated on your computerized medical record to alert staff of these concerns and **Orders of Behavioral Restriction** will be initiated to maintain a safe environment of care.

**Patient Record Flag notification:**

The wording of the flag will state: I requested a FOIA for the below, They refused to give me the information

"Veteran has a history of verbal aggression including use of profanity, yelling, and demanding."
"Veteran has a history of inappropriate communication, (frequent phone calls, profanity, demeaning remarks, potential threats) when perceived needs are not met."

*If you should ever find yourself in an emotional crisis wherein danger to yourself or others is imminent, please be advised that you should call 911 or go to the nearest hospital emergency room. For emotional support, 24 hours per day, please consider calling the Veterans Crisis Line: 1-800-273-8255 (press 1 for Veterans).*



Aleda E. Lutz VA Medical Center
1500 Weiss Street
Saginaw, MI 48602
www.saginaw.va.gov

23

**Order of Behavioral Restrictions:**

Pursuant to Federal Regulation, 38 CFR, Part 17.107, VA may restrict the time, place, and manner of medical care to Veterans who are disruptive or pose a risk of disruptive behavior. Accordingly, the following changes to your care are hereby in effect immediately. The following wording will be included on the behavioral flag documenting your restrictions:

"Veteran will check in with VA Police for any medical appointments or medical needs no more than 30 minutes prior to scheduled appointments to be escorted while on VA Medical Center property."

If you wish to appeal these restrictions, you have **30 days** to do so. You may appeal by doing the following:

a. Send a letter to the Chief of Staff at the below listed address stating your disagreement with the restrictions and the reasons for your disagreement. The letter must be postmarked no later than **+30 days from the date flag placed** to:

ALEDA E. LUTZ VA MEDICAL CENTER
Attn: Chief of Staff
1500 WEISS STREET
SAGINAW, MI 48602

b. These restrictions are effective as of 03/31/2021 and remain in effect during any appeal.

**Duration of Flag/Restrictions:**

Going forward, the Disruptive Behavior Committee will review Veteran Tawfiq's "flag" status 12 months from the date of this is letter. The flag may be removed prior to that point, if a consistent record of positive and safe behavior is clearly demonstrated.

**Appeal rights wording of the Flag:**

You may request to amend the language/wording used in documentation of the flag. If you wish to do so, please complete the attached form and submit to the Privacy Officer at:

ALEDA E. LUTZ VA MEDICAL CENTER
Attn: Privacy Officer

*If you should ever find yourself in an emotional crisis wherein danger to yourself or others is imminent, please be advised that you should call 911 or go to the nearest hospital emergency room. For emotional support, 24 hours per day, please consider calling the Veterans Crisis Line: 1-800-273-8255 (press 1 for Veterans).*



 VA
U.S. Department of Veterans Affairs

Aleda E. Lutz VA Medical Center
1500 Weiss Street
Saginaw, MI 48602
www.saginaw.va.gov

1500 WEISS STREET
SAGINAW, MI 48602

Thank you for your service. As a Veteran, you have served our country, for which I am grateful. Nevertheless, the purpose of the flag and the temporary restrictions is the promotion of the welfare and safety of the staff, Veterans, and all those who visit our facilities.

Sincerely,

**The Aleda E. Lutz VA Disruptive Behavior Committee**

*cc: Chief of Staff (11); Chief, Police Service (07B)*

*If you should ever find yourself in an emotional crisis wherein danger to yourself or others is imminent, please be advised that you should call 911 or go to the nearest hospital emergency room. For emotional support, 24 hours per day, please consider calling the Veterans Crisis Line: 1-800-273-8255 (press 1 for Veterans).*

T4372



**Aleda E. Lutz VA Medical Center**
**1500 Weiss St**
**Saginaw, MI 48603**

May 11, 2021

Mr. Neri Tawfiq
107 S. Washington Ave
Apt B412
Saginaw, MI 48607-1262

Dear Mr. Tawfiq,

I received your letter requesting an appeal of the Patient Record Flag (PRF), Category I, Behavioral and Order of Behavioral Restriction placed on your Computerized Patient Record System (CPRS). I reviewed the determination of the Disruptive Behavior Committee and concurred with the finding and decision to place the Patient Record Flag and order of behavioral restriction. Your request for appeal was then forwarded to two independent reviewers and then the Veterans Integrated Service Network (VISN) for an additional independent review. All reviewers concur with the decision to uphold the Patient Record Flag and behavioral restriction. No additional appeals of the PRF or the restriction will be accepted.

Your Patient Record Flag and behavioral restriction will be reviewed again in two years. The Disruptive Behavior Committee will determine whether to amend, continue, or discontinue the Patient Record Flag and behavioral restriction. The most effective way for you to influence future decisions about whether to continue the PRF and restriction is to demonstrate a significant and consistent positive change in your behavior. The restrictions do not reduce your eligibility for VA health care. You remain eligible to access any medically appropriate VA health care including scheduled or unscheduled services.

Our goal at the Aleda E. Lutz VA Medical Center is to provide quality care to our Veterans in a safe environment. Therefore, it is imperative that each Veteran and their visitor(s) show respect towards his/her treatment team and others within this facility. We look forward to providing you with the health care services to which you are entitled as a Veteran.

As a reminder: for life-threatening emergencies, you should come to the Aleda E. Lutz VA Medical Center's Urgent Care Clinic, go to the nearest VA Emergency Department, or go to the closest non-VA emergency department or crisis center at your own expense. If you are suicidal or in crisis, please call the VA's Suicide Hotline at 1-800-273-TALK (8255) 24/7/365.

Sincerely,

James R. Hines 1726462 Digitally signed by James R. Hines 1726462 Date: 2021.05.14 14:05:05 -04'00'

James R. Hines, MD, DABFP, FACOG
Chief of Staff

**Officer:** [redacted]

**Group:** 655 - ALEDA E. LUTZ VAMC - SAGINAW - VISN 10

**Event Start:** 03/23/2021 1424 **Event End:** 03/23/2021 1500

**Event:** ALARM

**Location:** ALEDA E. LUTZ VA MEDICAL CENTER - SAGINAW BLDG 22 - CLC

**Specific Location:** BUILDING 22-B705

**Notes:** ALARM DURESS/PANIC [redacted] responded to a Duress alarm in the basement of building 22 regarding the employee that was discharged from the dept. Neri Tawfiq was beating on the door but wasn't allowed entry. Mr Tawfiq was escorted throughout the facility and finally escorted towards his vehicle and he drove off station. I attempted to contact EEO officer and Union Rep. Neither had any further business to talk about with Mr Tawfiq. Officers again asked for him to leave the facility.

**Officer:** [redacted]

**Group:** 655 - ALEDA E. LUTZ VAMC - SAGINAW - VISN 10

**Event Start:** 03/23/2021 1424 **Event End:** 03/23/2021 1500

**Event:** ALARM

**Location:** ALEDA E. LUTZ VA MEDICAL CENTER - SAGINAW BLDG 22 - CLC

**Specific Location:** BUILDING 22 ROOM 22-B705

**Notes:** ALARM DURESS/PANIC [redacted] responded with [redacted] to the alarm and remained with Mr. Tawfiq until he left the facility.

??

8



DEPARTMENT OF VETERANS AFFAIRS POLICE
655 - ALEDA E. LUTZ VAMC - SAGINAW - VISN 10
1500 WEISS STREET
SAGINAW, MI, 48602

Follow Up

Reported By: [redacted]

**Parent Report Information**

Report Type: Follow Up

Reference Number: 655210077_1

Report Recorder: [redacted]

Report Disposition: CLOSED

Related Number:

Tracking Number: 1016241

**Follow Up Information**

**Synopsis**

ON 4-13-21 AT APPROXIMATELY 0700 HOURS THE VA POLICE DETECTIVE WAS ASKED TO REVIEW CAMERAS REGARDING AN ASPECT OF THIS ORIGINAL CASE. CAMERA REVIEW WAS UNSUCCESSFUL, AS THE ANGLE NEEDED TO BE REVIEWED DID NOT RECORD VIDEO DURING THE NECESSARY TIME ON 3-23-21.

**List of supplemental reports**

Follow Up 655210077_1_1_1

9

**List of contacts in this report**

| | | |
|---|---|---|
| [redacted] | WITNESS | 655210077_1_1_1 |
| | WITNESS | 655210077_1_1_1 |
| | WITNESS | 655210077_1_1_1 |

Narrative text

FOLLOW UP OVERVIEW

On 4-13-21 at approximately 0700 hours I [redacted] was writing reports in my office at the Aleda E. Lutz VAMC, an area of concurrent federal jurisdiction, when [redacted] asked me to do some camera review on a case. He told me the incident where officers needed to escort Neri Tawfiq off property required camera review.

Chief told me to check for camera angles on 3-23-21 starting at approximately 1415 hours. Neri had gone down to the pharmacy in the Basement of Building 22 and according to the Journal Entry on that date, was pounding on the outer doors wanting to come in or speak to someone about being terminated.

When I got back from the gun range for training later that afternoon, I pulled up the cameras. The camera which is believed to show the outer door of the pharmacy is 22-BE-1. This camera did not record video on that date or time. I asked [redacted] [redacted] and [redacted] to attempt to pull recordings of that camera up, but neither were successful. I decided I would try again the next day, in case the system was not functioning properly.

On 4-14-21 at approximately 1245 hours I reviewed cameras again. 22-BE-1 still was showing "No recorded video at this time." From other camera angles I could see Neri approach the area of the door, but no other camera showed the outside of that door where he would have been standing. I could see the inside of the administrative area of the pharmacy on a different camera. This showed [redacted] coming up to the window and talking to somebody on the other side of the window.

| Prepared By: | Submitted Date |
|---|---|
| [redacted] @va.gov | 04 15 2021 1112 |
| Signature | Reviewed By/Date |
| | [redacted] 04 16 2021 1157 |

She was making hand gestures which normally indicate she has nothing further to say to the subject.

On 4-15-21 I downloaded the video from 22-BE-Pharm Admin-1 onto the share drive.

Camera review was inconclusive.

| Prepared By: | Submitted Date |
|---|---|
| [redacted] (Vargas) | 04-15-2021 1112 |
| **Signature** | **Reviewed By/Date** |
| | [redacted] 04-16-2021 1157 |

DEPARTMENT OF VETERANS AFFAIRS POLICE
655 - ALEDA E. LUTZ VAMC - SAGINAW - VISN 10
1500 WEISS STREET
SAGINAW, MI, 48602

Follow Up

Reported By: [redacted]

## Parent Report Information

| | |
|---|---|
| **Report Type** | **Reference Number** |
| Follow Up | 655210077_1_1 |
| **Report Recorder** | **Report Disposition** |
| [redacted] | CLOSED |
| **Related Number:** | **Tracking Number** |
| | 1032079 |

## Follow Up Information

**Synopsis**

THE VA POLICE DETECTIVE WAS DIRECTED TO ATTEMPT DOWNLOADING CAMERA FOOTAGE SHOWING THE OUTER DOOR TO THE PHARMACY ENTRANCE IN THE BASEMENT OF BUILDING 22. THIS CAMERA IS NOT OPERATIONAL EITHER IN VIDEO REPLAY OR LIVE FEED. THE FOOTAGE WAS UNABLE TO BE DOWNLOADED AS A RESULT. WRITTEN STATEMENTS WERE OBTAINED FROM EMPLOYEES WHO WITNESSED THE INCIDENT.

11

## List of contacts in this report

| | | |
|---|---|---|
| [redacted] | WITNESS | 655210077_1_1 |
| | WITNESS | 655210077_1_1 |
| | WITNESS | 655210077_1_1 |

## Contact # 1 (WITNESS)

**Full Name**
[redacted]

**Drivers License** | **Drivers LicenseState** | **Email Address**
[redacted]@VA.GOV

**Age** | **Date of Birth** | **Gender** [redacted] | **Race** [redacted]

**Department** | **Title** [redacted]

## Addresses

| Street Number | Street Direction | Street Name | Street Type | Apt./Suite |
|---|---|---|---|---|
| 1500 | | WEISS | STREET | |

| City | State | Zip | Country | Address Type |
|---|---|---|---|---|
| SAGINAW | MI | 48602 | USA | WORK |

## Phones

(WORK) 989-497-2500 EX[redacted]

**Prepared By:** [redacted]@va.gov)

**Submitted Date** 08 22 2021 1124

**Signature**

**Reviewed By/Date** [redacted] 08 27 2021 0915

**Contact # 2 (WITNESS)**

Full Name

Drivers License | Drivers LicenseState | Email Address
@VA.GOV

Age | Date of Birth | Gender | Race

Height | Weight | Hair Color | Eye Color

Approx. Age | Demeanor | Build | Clothing

Department
OTHER

Title

**Addresses**

| Street Number | Street Direction | Street Name | Street Type | Apt./Suite |
|---|---|---|---|---|
| 1500 | | WEISS | STREET | |

| City | State | Zip | Country | Address Type |
|---|---|---|---|---|
| SAGINAW | MI | 48602 | | |

**Phones**

(WORK) 9894972500 EX

**Contact # [illegible] (WITNESS)**

12

Full Name

Drivers License | Drivers LicenseState | Email Address
@VA.GOV

Age | Date of Birth | Gender | Race

Height | Weight | Hair Color | Eye Color

Approx. Age | Demeanor | Build | Clothing

Department

Title

**Addresses**

| Street Number | Street Direction | Street Name | Street Type | Apt./Suite |
|---|---|---|---|---|
| 1500 | | WEISS | STREET | |

| City | State | Zip | Country | Address Type |
|---|---|---|---|---|
| SAGINAW | MI | 48602 | USA | WORK |

**Phones**

**Prepared By:** @va.gov)

**Submitted Date** 04 22 2021 1124

**Signature**

**Reviewed By/Date** 04 27 2021 0915

Narrative text

FOLLOW UP OVERVIEW

Please Read carefully!!!

On 4-19-21 at approximately 1430 hours [redacted] asked me to attempt downloading the video from camera 22-BE-1, which if operational, would show the exterior of the door which enters into the pharmacy. This would be able to either prove or disprove whether Neri "pounded" on the door as pharmacy staff was alleging. Despite two attempts, the video was unable to be downloaded, as nothing recorded, and it appears this camera continues to be non-operational.

On the morning of 4-20-21 at approximately 0640 hours I attempted to download the video again, but was unsuccessful. With each of the three attempted downloads, the same error code appeared which said, "An unknown error occurred while doing the export process."

I spoke to [redacted] and advised him of this. I told him I was thinking of speaking to [redacted] and [redacted] as they were all witnesses to what happened. I would ask each of them to fill out a voluntary written statement regarding the events of that day. [redacted] agreed this would be a good idea.

13

FOLLOW UP WITH [redacted] STAFF

At approximately 1115 hours I went to the pharmacy to hand out VA Form 0024 (Voluntary Witness Statements) to [redacted] [redacted] Once I was let in, [redacted] advised me [redacted] but would be back on Thursday 4-22-21. She said [redacted] was out of the office until approximately 1400 hours. I asked her if she would be willing to fill out a voluntary statement regarding the events of March 23rd with Neri. She said she already did. I asked her if it was a Report of Contact that she filled out and she said yes. I told her police services can't use a Report of Contact in lieu of a Voluntary Witness Statement. She said she would fill one out and I could come back later to watch her sign the document. I thanked her for her time.

At approximately 1200 hours I went back to collect the statement from [redacted] I observed her sign the document as the declarant, and I signed as the witness. I would later download a copy of this, as well as the other voluntary statements onto the share drive. The following is what [redacted] wrote in her statement:

[redacted] in basement building 22 and it is [redacted] pharmacy. Around 2:15pm on March 23rd, 2021, I heard the doorbell ring and saw Neri Tawfiq standing at the pharmacy window. I got up and asked if I could help him with something. He requested to speak to [redacted] or [redacted] I went into [redacted] and said "He's here." She went out to the window and asked what she could do for him. He requested to speak to her regarding being terminated over false accusations. [redacted] told him it was due to a conduct issue, including an unprofessional email that was sent to her. He then requested a list of things he did to lead to termination. He then began demanding [redacted] answer his questions about being terminated, to which she responded several times that it was a conduct issue and he is entitled to the appeals process. She reiterated that neither she nor [redacted] was going to talk to him today.

He left the window and walked down the hall around the corner, and returned a minute later still stating he wanted to talk. At this point he was being loud and acting agressive (sic). I hit the Lynx button on my desktop and [redacted] and I waited a few moments. Neri was still at the window during this time talking loudly and [redacted] was trying to diffuse the situation. I then called x13911 and asked for an officer to come to the basement because Neri was being very loud and causing a scene in the hallway. He then left the window and walked around the corner towards the elevators. We did not see him again after that, but received word a few minutes later that he was upstairs near the dispensing pharmacy talking to some police officers." End of statement.

I spoke to [redacted] and advised him that based off of [redacted] statement, Neri did not pound or beat on the pharmacy door. It is unknown if this was the exact wording to [redacted] (who was serving as our [redacted] and used the wording

| Prepared By: | Submitted Date |
|---|---|
| [redacted] | 04 22 2021 1124 |
| Signature | Reviewed By/Date |
| | [redacted] 04 27 2021 0915 |

beating on the door") in the journal entry regarding this case. [redacted] stated he understood.

At approximately 1215 hours I sent [redacted] a Teams message, asking her to define what she meant by Neri acting aggressive. She responded by saying, "agitated, throwing his hands up in the air and back down again, leaning on the ledge really close to the window." I asked her to email me this so I could print it off and add it to the case file. A few minutes later she did so. This will be scanned onto the share drive.

At approximately 1415 hours I met with [redacted] in his office in the basement of Building 22 pharmacy. I asked him if he would be willing to complete a written statement regarding what he saw and heard on the date on question. He said he was willing to do so. His statement read as follows:

"On March 23rd in the early afternoon, Neri Tawfiq after having been removed from duty, approached the inpatient pharmacy in building 22. He was halted at the door on the outside by [redacted] [redacted] was called into the main office area to address Mr. Tawfiq. At this time Neri was slightly aggitated (sic) but not aggressive towards staff, he was just trying to get answers from leadership regarding his situation. [redacted] informed him of the procedure to follow to grieve his discharge and he walked away. Approximately 5 minutes later he returned in the same manner as he did the first time, and was again instructed of procedure. At this time [redacted] attempted to reach police by Lynx and telephone. Mr. Tawfiq then left the area abruptly. Where he travelled from pharmacy is unknown." End of statement. I observed as [redacted] signed his statement and I signed as the witness. I thanked [redacted] for his time.

At approximately 1342 hours I sent [redacted] a Teams message, asking what time I could meet with her and drop off the witness statement forms. She said after Morning Report tomorrow morning would work. I told her I would meet with here then.

On 4-22-21 at approximately 0855 hours I dropped off the voluntary witness statement to [redacted] I explained to her I wanted the truth about whatever she heard, saw and observed on the day and incident in question. She stated she understood and would let me know when her statement was completed. At approximately 1012 hours [redacted] sent me a Teams message, saying her statement was ready for a signature.

What word did she crossed out??

Shortly thereafter I met [redacted] in her office. I reviewed her statement. There were two parts where she crossed out a word. I told her to put her initials next to what she crossed out, so that it couldn't be suggested that I altered her statement. She did so. I then watched her sign her statement, and I signed as the witness. Her statement read as follows:

Chief Teresa DuFresne!!

"At approximately 1425 on 3-23-21, my [redacted] came into my office and reported to me that Neri Tawfiq, a recently terminated staff pharmacist, was at the Pharmacy door. My [redacted] looked and sounded fearful when she came to my office. I came out of my office and approached the service window to speak to Mr. Tawfiq. [redacted] [redacted] came out of his office and witnessed the conversation between Mr. Tawfiq and I. [redacted] was also a witness to the conversation.

Mr. Tawfiq indicated that he was fired for a false accusation and wanted me to give him a list of reasons for his termination. I reiterated what I had told him earlier that day. The reason for his termination was poor conduct and his appeal rights were included in the letter he had in his hand. Mr. Tawfiq proceeded to say that I had to give him a list because 'they said so.' I told him I was unsure who he was referring to, I would not give him any additional information nor argue with him. He muttered 'This is some bullshit.' He again asked for a list and I refused.

Mr. Tawfiq turned to leave, took a few steps, turned back around and approached the service window again. At that time I told him to leave the Pharmacy area. He indicated he wasn't leaving until he got the list of reasons. I instructed [redacted] to contact Police Service and use the Duress system as Mr. Tawfiq's demeanor and actions were making me uncomfortable and fearful for both myself [redacted]

Again, she treats me as if I am a dangerous black man, because she knows that a wrongful termination was done. She contact the DBI to put the charges on my record!!!

At some point in time during my interaction with Mr. Tawfiq, [redacted] [redacted] approached the Pharmacy area. I waved them away to ensure they would not be in direct contact with Mr. Tawfiq.

I am a calm person. I am not some angry Black man or violent Black man!!

14

| Prepared By: | Submitted Date |
|---|---|
| [redacted] @va.gov | 04 22 2021 1124 |
| Signature | Reviewed By/Date |
| | [redacted] 04 27 2021 0915 |

While we were waiting for Police Service to arrive, Mr. Tawfiq again stated he was terminated due to a false accusation. He seemed to be focused in one situation with one [redacted] over and over. I relayed to him that there was not just one situation of conduct that resulted in his termination and reminded him of the email that he had sent to me in which he was unprofessional and demeaning. That made him noticeably upset and more argumentative. At that time, in an effort to diffuse the situation, I started to only instruct him over and over again to leave the area until he finally did.

[redacted] came into the Pharmacy shortly after Mr. Tawfiq left and indicated they had heard Mr. Tawfiq was banging on the elevator with his walking device. I believe this information was relayed to the Police.

After the exchange with Mr. Tawfiq, I was uncomfortable walking out to my car when I left that day. I requested a Police escort to my car to ensure my safety. Members of my staff indicated to me that they felt fearful. I advised them to walk out in a group and request a police escort if needed." End of statement.

It should be noted that none of these written statements said Neri pounded or beat on the door to pharmacy that day at that time. All documents pertaining to statements made by employees for this incident have been uploaded to the share drive, in a folder bearing this incident report number.

I then briefed [redacted] on my findings, and advised I'll be submitting the incident report.

OUTCOME

Based on the findings of this follow up, Neri did not pound or beat on the door in any way. Case closed.

(15)

Please Note the Emails that were sent to the Chief of Pharmacy. "She fired me because, I called her out on something she should have done. 2 false allegations made against me, and she requested to be sent to Acting Medical Director Chris Cauley for my termination.

| Prepared By: | Submitted Date |
|---|---|
| [redacted] | 03 22 2021 1124 |
| Signature | Reviewed By/Date |
| | [redacted] 04 27 2021 0915 |

"She did not care and ask me if these allegations were true, she ... wanted me gone!!

and support to Veteran's care per HRF protocols

/es/ KARYN N GENDREAU, LMSW
Suicide Prevention Coordinator
Signed: 03/25/2021 16:03

| | |
|---|---|
| Date/Time: | 24 Mar 2021 @ 1527 |
| Note Title: | PSYCHIATRY SOCIAL WORK INPATIENT ASSESSMENT AND PLAN |
| Location: | Lieutenant Colonel Charles S Kettles VA Medical Center |
| Signed By: | KOEHMSTEDT,HOLLY |
| Co-signed By: | KOEHMSTEDT,HOLLY |
| Date/Time Signed: | 25 Mar 2021 @ 1034 |

Note:

LOCAL TITLE: PSYCHIATRY SOCIAL WORK INPATIENT ASSESSMENT AND PLA
STANDARD TITLE: SOCIAL WORK INPATIENT E & M NOTE
DATE OF NOTE: MAR 24, 2021@15:27 ENTRY DATE: MAR 24, 2021@15:27:49
AUTHOR: KOEHMSTEDT,HOLLY EXP COSIGNER:
URGENCY: STATUS: COMPLETED

Current address on record
107 S WASHINGTON AVE APT B412
SAGINAW, MICHIGAN 48607

ADMISSION DATE: 24 March 2021

SOCIAL WORKER AND VETERAN MET ON: 24 March 2021

REASON FOR ADMISSION: Veteran stated he was terminated at his employment at Saginaw VAMC, stating this was without explanation. He stated he was provided conduct violation printout, but wouldn't explain why he violated the conduct,
and stated his supervisor refused to explain. He stated he was devastated and couldn't comprehend that he was fired. He is in contact with his union representative but very upset and would like to work on appealing. Other than this, he stated he "A few weeks ago, I came into his [supervisor's] office,
and he is saying this is the accusations that they said. I said I didn't do

it, but he said, 'that's what they said'." Veteran stated his word did not
matter. Veteran stated he was accused of "throwing stuff around the office",
and Veteran asked his supervisor to look at the camera's, and his supervisor

again refused. Veteran stated he was told by his union supervisor that he won't be fired related to the code of conduct violation, but Veteran stated

he was told yesterday that he was fired for the code of conduct violation. Veteran stated the firing "just took me down" to the point he developed SI.

Veteran stated he presented to the EEO office to fill out the Merit System Protection Board paperwork to contest. He stated while filling out the paperwork, he started feeling depressed and suicidal, particularly after he was told he couldn't schedule a meeting the Director of the VA who signed off on his paperwork. Veteran stated he won't have income starting May 2021 to pay his rent due to job loss. He was admitted to AIMH unit for stabilization of SI.

ACUTE TREATMENT GOALS: "I want my job back, I know you guys can't do that... I'm just worried because April is my last check, I won't have money in May to pay rent."

RECOVERY GOALS/POST DISCHARGE TREATMENT GOALS: "I was gonna trying to get a contract with the VA to due pending. I got my consultant's license, pay off my two loans for student loans and my car. But I can't do that now."

VETERAN IDENTIFIED STRENGTHS: When asked if he has personal strengths, characteristics, or support, Veteran appeared overwhelmed and replied, "No. I don't."

VETERAN IDENTIFIED LIMITATIONS: "I'm out of a job. And it's a federal job. Do you know how long it took me to get this job? It took years...now I'm back on the street."

GENERAL ASSESSMENT OF VETERAN DURING EVALUATION: Veteran was sitting in his wheelchair in milieu shortly after admitting to the unit. He witnessed this writer working with other patients for discharge, asking, "Are you the social worker? Can I meet with you? I was just wrongfully terminated from my job and need to get some documents from my e-mail." Veteran was informed that this writer would try to meet with Veteran after the numerous discharges. Veteran continued to wait in milieu throughout the day and reproached this writer, appearing anxious but was polite and redirectable when this writer was still working with discharges. This writer met with Veteran later in the afternoon. Veteran requested his phone to show this writer e-mails from his appointed Union representative and Equal Employment Opportunity (EEO) office. He agreed to assessment after this writer assisted him in printing the documents he was e-mailed related to his termination, for which he was terminated from job yesterday.



Veteran was of large build, with long dreadlocks, comfortably dressed in AIMH-issued T-shirt and pajamas, appearing in good hygiene, using wheelchair to ambulate, which he was able to maneuver. He stated he is a disabled Veteran and cannot stand for long periods of time and uses a wheelchair at home/work as well. Veteran had anxious affect but was smiling and polite. Veteran attributed his acute psychiatric issue entirely to his employment loss yesterday, which he stated happened without explanation of "conduct violation" he was reported for.
He sighed and put his head in his hands, reading over the documentation regarding his termination he printed out from his e-mail, stating, "That's crazy, yo" numerous times. He stated he had proceeded with the EEO office to

appeal his termination already, but would like to continue writing a statement for his appeal to be more detailed than the one he already submitted to the EEO office. He stated he will currently spend his time reflecting and writing, thanking this writer for printing out documents related to his termination.

ETHNIC AND CULTURAL FACTORS: African American

CURRENT LIVING CONDITIONS
Rents apartment in Saginaw, MI.
Able to return home upon discharge?
Yes, however he is concerned with paying rent in May 2021 due to no longer having a job.

FAMILY CIRCUMSTANCES/COMPOSITION OF THE FAMILY GROUP: Veteran stated he is once divorced with no children currently. Veteran stated his mother and son died in the same year, 2014. Veteran stated his son was just born when he passed away, after crying he was taken to the doctor and he passed of a rare heart defect. He stated since his son passed, he had flashbacks and stayed single, without his baby's mother or any significant other. Veteran stated additionally, his grandfather passed away 4-5 weeks ago, who he was really close with.

days (NT)

Veteran stated he additionally has 4 sisters, no brothers. "I talk to my older sister when I can, I talk to my younger sister when I can, I talk to my twin sisters when I can. It's just, they got their own life, I don't want to bother them more than I have to." He stated he has his father but "we're not close like that, and he knows that."

ABUSE HISTORY:
Documented history of MST, which Veteran preferred not to discuss.

SOCIAL SUPPORT: Veteran stated he is a member of American Legion. He stated "I'm out, spiritually, I haven't found my home. I don't disrespect nobody."

PEER GROUP: Veteran stated he has one very good friend, who he calls "brother" Benny Bass. He stated Benny is the only friend he told about

No
STREET DRUG USE IN THE PAST 12 MONTHS?
Yes
TYPE: Marijuana and cocaine

AMOUNT: Unclear

FREQUENCY: Patient use to use daily while he was in pharmacy school, his last use was in June or July 2020, it is unclear how frequently he was using at this time.

Denies consequences of use
PRESCRIPTION DRUG ABUSE IN THE PAST 12 MONTHS?
No

If Veteran has past or current substance use/abuse/dependence:
-HISTORY OF USE/ ABUSE/ DEPENDENCE WITHIN LIFETIME PRIOR TO LAST 12 MONTHS Patient

s a history of marijuana, cocaine, and alcohol use. His cocaine use was heavy during pharmacy school. He reports having difficulty sleeping on account of his PTSD and MST. so you'd use cocaine to help them stay awake. His last use of

cocaine or marijuana was in June or Ju ly 2020. Patient reports that he uses alcohol, drinking 6 to 8 Long Island iced teas at a time. He was unclear regarding frequency. He reports that his last drink was 3 to 4 weeks ago.
-HISTORY OF WITHDRAWAL: Does not report a history of significant withdrawal
-CONSEQUENCES FROM USE: Unknown/unreported
-INSIGHT INTO CONSEQUENCES FROM USE: n/a
-TYPES OF PREVIOUS TREATMENT AND RESPONSES TO TREATMENT: Unknown
-TREATMENT ACCEPTANCE OR MOTIVATION FOR CHANGE AND ANY OBSTACLES TO RECOVERY: Did

not discuss this at length during interview today

PAST MEDICAL/SURGICAL HISTORY
-DIAGNOSES
wisdome teeth out
fallen arches with bilateral hallux valgus
low back pain due to degenerative arthritis
MST from service during deployment and combat
Attention deficit disorder-on medication through mental health
PTSD
depression with past thoughts of suicide-denies current thoughts and states is "connected with Veteran's Crisis" line and has mental health

The patient reports that he was quite distraught while filling out paperwork online yesterday in an effort to get to the bottom of his termination. In the setting he began having thoughts about killing himself. It is unclear whether he

had thoughts of specific method or the degree of his intent. He was quite clear,

however, that he did not have any homicidal ideation or thoughts about hurting the people who were involved in his termination.

-Psychiatric Review of Systems:

As far as depressive symptoms, patient denies difficulty sleeping, anhedonia, guilt, change in energy, decreased concentration, change in appetite, psychomotor agitation or depression. He does report suicidal ideation as noted above.He does describe feeling the sense that his mood is descending, and whenever he feels this way he knows it is time to seek help

Patient does not report any symptoms of psychosis, but this was not formally assessed.

Patient reports some anxiety, reporting that it is recently increased following his termination.

As far as PTSD symptoms, patient reports that he has flashbacks and nightmares. However, his symptoms are improved from their worst. He reports that Seroquel and process and Prazosin have been Helpful with sleep.

===PAST PSYCHIATRIC HISTORY===

-PAST PSYCHIATRIC DIAGNOSES:PTSD, MDD, MST, ADHD, cocaine use disorder, marijuana use disorder, alcohol use disorder

-PAST PSYCHIATRIC HOSPITALIZATIONS

Patient reports that he was hospitalized following his grandfather's passing

about four weeks ago. He was experiencing thoughts of suicide, and was thinking about driving into traffic or using one of his guns. He flagged down a police officer and asked to be admitted to the hospital. Per chart review, patient was admitted to Battle Creek VA Hospital in January 2021 with suicidal ideation in the setting of the passing of his grandfather.

Per chart review, Patient was admitted to the VA hospital in August 2019 for PTSD. He presented to the ED feeling depressed and suicidal. His Zoloft was increased and he was started on prazosin.

-PAST AND CURRENT PSYCHIATRIC TREATMENT:

Patiently currently being treated with Seroquel 400 mg QHS, partisan 5 mg QHS so filling 200 mg daily, Adderall 10 mg BID, BuSpar 5 mg Twice daily, naltrexone

50 mg daily.

37

===SAFETY AND SUBSTANCE USE HISTORIES===
(Insert AIMH SAFETY AND SUBSTANCE USE HISTORY template located in Templates, Shared Templates, Psychiatry Inpatient. This is a JCAHO requirement. You must answer every question.)

SAFETY AND VIOLENCE HISTORY
Any suicide attempts in the past 6 months?
No
Any suicidal ideation in the past 6 months?
Yes
Describe plan/preparation/intent to act.

Patient has had suicidal ideation on several occasions, once earlier this year in January after the passing of his grandfather more recently yesterday and today following his termination from work yesterday.
Any suicide attempts in lifetime prior to the past 6 months?
Yes
Describe plan/preparation/intent to act:

Reports of past suicide attempt in which he placed a loaded handgun into his mouth and pulled the trigger, there was no round in the chamber. Patient then grabbed another handgun which he was sure had around in the trigger, but before making a second attempt he called for help.
Any suicidal ideation in lifetime prior to the past 6 months?
Yes
Describe plan/preparation/intent to act.

See above
Any violence towards others in the past 6 months?
No
Any violence towards others in lifetime prior to past 6 months?
No

SUBSTANCE USE HISTORY
ALCOHOL USE IN THE PAST 12 MONTHS?
Yes
TYPE: Long Island iced teas

AMOUNT: 6 to 8 cans

FREQUENCY: Intermittent, at one point patient reports that he was using quite regularly while he was living in his car in 2020.

Denies consequences of use
TOBACCO USE IN THE PAST 12 MONTHS?



**U.S. Department of Justice**

United States Attorney's Office
Eastern District of Michigan

ttorney

211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Telephone: (313) 226-9617
Facsimile: (313) 226-3271
Email: zak.toomey@usdoj.gov

June 29, 2021

cawt of veterans Appeals

Ne
107 S. Washington
Saginaw, MI 48602

chief of staff James Hines said upper level management viewed the evidence the same day. So the questions is where is the video footage ??

RE: *Neri Tawfiq v. Teresa Dufresne*
Case No. 21-10976 (E.D. Mich.)
10th Circuit Case No. 21-44244-P

Dear Mr. Tawfiq:

Enclosed please find a copy of the Defend Motion for Summary Judgment filed today regarding the above-captioned case.

Very truly yours,

**SAIMA MOHSIN**
Acting United States Attorney

*/s/ Zak Toomey*
**ZAK TOOMEY**
Assistant United States Attorney

(4)

## Introduction

Plaintiff Neri Tawfiq is a current patient of the U.S. Department of Veterans Affairs (VA) and former employee. Tawfiq accuses his former supervisor at the Saginaw VA, Teresa Dufrsene, of stalking him because, after he had a violent outburst at work, the VA placed a behavioral flag on his patient record and Dufresne recommended his termination. Tawfiq petitioned a state court for a personal protection order that would prevent his former supervisor from entering her work site or reporting Tawfiq's improper conduct. Because Tawfiq's suit is against a federal employee acting within the scope of her employment, the United States removed this suit to federal court under 28 U.S.C. § 1442 and now moves for summary judgment because there is no valid path for Tawfiq to obtain the injunctive relief he seeks in this suit.

## Background

From 11-2020 to 3-23-21, my care was at VA Ann Arbor VA. No Saginaw Aleda Lutz

Plaintiff Neri Tawfiq receives medical care at the Saginaw VA Medical Center. (*See* PPO, ECF No. 1, PageID.8, 10). In addition, from November 22, 2020, to March 23, 2021, Tawfiq was employed as a staff pharmacist at the Saginaw VA Medical Center. (Hines Decl., ECF No. 1, PageID.5, ¶5). Defendant Teresa Dufresne is the Chief of Pharmacy at the Saginaw VA and was Tawfiq's third-line supervisor. (Hines Decl., ECF No. 1, PageID.5, at ¶6).

James R. Hines, MD, DABFP, FACOG

On March 23, 2021, Tawfiq had an outburst at work at the Saginaw VA



during which he yelled, used profanity, and made threats. (Exhibit 1 - OBR Ltr., at 1). Based on this conduct, Dufresne recommended that the VA terminate Tawfiq and, after upper-level management reviewed the incident, the VA terminated him the same day. (Hines Decl., ECF No. 1, PageID.5, at ¶¶ 7, 8). On the day of his termination, Tawfiq was instructed only to speak with Human Resources about his termination and instructed not to contact Dufresne. (Exhibit 2 - VA Police Report, at 1).

Two days later, on March 25, 2021, Tawfiq contacted the Equal Employment Opportunity Commission (EEOC) to file an Equal Employment Opportunity (EEO) complaint for discrimination against the VA based on his termination. (Exhibit 3 EEO Partial Accept. Ltr., at 1, ¶1.).

On March 29, 2021, Tawfiq emailed Dufresne twice. (Exhibit 4 - Tawfiq Emails, at 1–2). Dufresne did not respond to either email. (*See id.*). On March 31, 2021, a VA regional management committee reviewed Tawfiq's March 23rd outburst and determined that he posed a risk to patient and staff safety when visiting VA medical facilities as a patient. (Exhibit 1 - OBR Ltr.). Dufresne is not a member of this committee. (Exhibit 5 – Liegghio Decl., at ¶¶ 5–6). On April 1, 2021, the committee placed a Category I Behavioral Patient Record Flag on his file and mailed Tawfiq a letter notifying him of the patient flag the same day. (Exhibit 1 - OBR Ltr.); *see also* 38 C.F.R. § 17.107. Based on that categorization, Tawfiq is

Aleda Lute said "their cameras were not working"



**DEPARTMENT OF VETERANS AFFAIRS**
**OFFICE OF RESOLUTION MANAGEMENT**

Written Affidavit
in the Matter of the EEO Complaint of Discrimination filed by

Neri Tawfiq
Complainant

v.

Case No. 200J-0655-2021102927

Secretary
Department of Veterans Affairs
810 Vermont Avenue, NW
Washington, DC 20420

Respondent

Facility: Aleda E. Lutz VAMC
Saginaw, MI

Supervisor of Teresa DuFresne, James Hines the staff of Chief Fabricated to U.S. Department of Justice about my Termination. This is why I filed a PPO because I am scared of leadership @ Aleda E Lutz VA !!!

**The accepted claim under investigation is:**

**Claims: Whether complainant was subjected to a hostile work environment based on Race (Black), Sex (Male), Color (Brown), and Disability, when: a) from January 4, 2021, until March 23, 2021, coworkers commented about his disability,3 told him to, "shut up," and falsely accused him of chastising them; b) since January 4, 2021, until March 23, 2021, managers asked about the color of his skin and about his dreadlocks, commented on once having a Black pharmacist, told him he was a "know-it-all," told him to keep his personal life to himself and to not question his coworkers, dismissed his professional input on their work, and dismissed/ignored his complaints of harassment; c) on January 26, 2021, he overheard coworkers discussing his hospital visit and when he reported the matter to a manager, he was told he was, "...probably just hearing things," and then the manager took no action to address his harassment; d) on March 15, 2021, a coworker said to him that he (complainant), "liked someone playing in (his) ass," a supervisor publicly commented his (complainant's) wearing a pink shirt meant he was gay, and a supervisor touched him on his lower back; e) on March 21, 2021, managers commented that his dreadlocks were "down"; and, includes the following independently actionable claims:**

**(1) On March 11, 2021, he received a Written Counseling.**

**(2) On March 19, 2021, he received a Letter of Instruction.**

**(3) On March 23, 2021, his probationary employment was terminated.**

1. **Do you (Teresa DuFresne) solemnly swear/affirm that the responses you provide in response to the following questions are true and complete to the best of your knowledge and belief?**
   Yes

2. **Write your complete name for the record?**
   Teresa Lynn DuFresne

3. **Who is your first line supervisor?**
   James Hines, Chief of Staff

4. **Who is your second line supervisor?**
   Chris Cauley, Acting Medical Center Director

5. **What is your sex?**
   Female

6. **What is your race?**
   Caucasian

7. **What is your color?**
   White

8. **Were you aware of the complainant's race, sex and color?  If so, what are they?**
   Yes. African American male

9. **If so, when and how did you become aware of the complainant's race, sex, and color?**
   When a candidate accepts a tentative offer of employment, Human Resources sends over a "green sheet" which identifies the applicants race and sex.

10. **Were you aware of the complainant's disability?**
    Yes

11. **If so, when and how did you become aware of the complainant's disability?**
    I was made aware of Mr. Tawfiq's service connection when he sent an email to several individuals indicating that he had suffered service connected injuries.

12. **Did the complainant file a union grievance or MSPB case regarding any of the issues stated in this complainant? If so, which did he file and when? Please Explain**
    I do not know of any union grievances filed by Mr. Tawfiq. I believe he filed a case with MSPB but I am not privileged to any of those details.

**Claim: (1) On March 11, 2021, he received a Written Counseling.**

07/17/2021

# Rebuttal Statement

From: Bean, Brandi L. (ORMDI) (brandi.bean2@va.gov)
To: neri_tawfiq@yahoo.com; neri_tawfiq@icloud.com
Date: Tuesday, July 6, 2021, 03:00 PM EDT

(1)

Please read this in its entirety page from page. This is dealing with my Termination and Behavioral Flag placed on my profile.

Good day,

Please reply to this email and provide a rebuttal statement. The rebuttal statement is your response to the articulated reasons that management has stated regarding your accepted claim. Below, please see the reasons and provide a counter statement by Monday, July 12, 2021.

**Claims: Whether complainant was subjected to a hostile work environment based on Race (Black), Sex (Male), Color (Brown), and Disability, when: a) from January 4, 2021, until March 23, 2021, coworkers commented about his disability, told him to, "shut up," and falsely accused him of chastising them; b) since January 4, 2021, until March 23, 2021, managers asked about the color of his skin and about his dreadlocks, commented on once having a Black pharmacist, told him he was a "know-it-all," told him to keep his personal life to himself and to not question his coworkers, dismissed his professional input on their work, and dismissed/ignored his complaints of harassment; c) on January 26, 2021, he overheard coworkers discussing his hospital visit and when he reported the matter to a manager, he was told he was, "...probably just hearing things," and then the manager took no action to address his harassment; d) on March 15, 2021, a coworker said to him that he (complainant), "liked someone playing in (his) ass," a supervisor publicly commented his (complainant's) wearing a pink shirt meant he was gay, and a supervisor touched him on his lower back; e) on March 21, 2021, managers commented that his dreadlocks were "down"; and, includes the following independently actionable claims:**

**(1) On March 11, 2021, he received a Written Counseling.**

**(2) On March 19, 2021, he received a Letter of Instruction.**

**(3) On March 23, 2021, his probationary employment was terminated.**

Chief of Staff James R. Hines MD Report something different in U.S. Department of Justice on my termination.

Articulated Reasons:

Management stated the complainant did receive a written counseling on or around the date 3/11/2021, his Supervisor, Jeffrey Johnson, had spoken to him regarding multiple performance and conduct related concerns on or around 3/11/21 and Post training evaluation showed that he was not receptive to some of the ways that they deal with work. The complainant received a Letter of Instruction from his supervisor Jeffrey Johnson on 3/19/21, about his conduct. Bria Irvin a staff member disclosed that the complainant was treating her badly singling her out and chastising her. The complainant was terminated during his probationary period on 3/23/21, for conduct related concerns, which included chastising the Chief of Pharmacy for her leadership style, and saying he could help her do her job.

Where is the email stating this??



Management stated they have no knowledge of the complainant's coworkers commenting on his disability, him being told to, "shut up," or being asked about his skin color or any comments concerning the complainant's dreadlocks, being called a know it all or comments about his personal life . Management did stated that the complainant was accuses of chastising Bria Irvin.   Management and witnesses stated they did not discuss the complainant's disability or hospital visit, he was not told was probably hearing things. No one said to the complainant ""liked someone playing in (his) ass," a supervisor publicly commented his (complainant's) wearing a pink shirt meant he was gay, and a supervisor touched him on his lower back; Management claims that the complainant did not bring these issues of harassment to their attention. Management denies that the complainant was discriminated against based on his race, sex, color or disability.

Brandi Bean (She/Her/Hers)

EEO Specialist (Investigator)

The Office of Resolution Management, Diversity& Inclusion (ORMDI) – Midwest District

2255 Enterprise Drive

Westchester, Illinois 60154

Phone: 708-236-2822

Cell: 224-775-8520

Fax: 708-236-2898

Brandi.Bean2@va.gov

VA Core Values: Integrity Commitment Advocacy Respect Excellence

VA Core Characteristics: Trustworthy | Accessible | Quality | Innovative | Agile | Integrated

NOTE: If you are not the intended recipient, any dissemination or duplication of this e-mail is prohibited by law.  If you received this e-mail in error, please permanently delete and contact the sender by e-mail.

NOTICE: ORM-DI is operating in a 100% telework environment. ORM-DI does not have the capability to send and/or receive hardcopy documents at this time.  In order to be more responsive, we ask that if you have previously sent documents to us via U.S. Mail or other delivery services, please resend those documents to us electronically. All meetings, interviews, and mediation sessions will be conducted in a virtual capacity (i.e. telephonic, skype, video conference etc.). Your patience is appreciated during the COVID-19 Pandemic.

Aleda E. Lutz VA Medical Center
1500 Weiss Street
Saginaw, MI 48602
www.saginaw.va.gov

March 23, 2021

Neri Tawfiq
Staff Pharmacist
Aleda E. Lutz VAMC
1500 Weiss Street
Saginaw, MI 48602

SUBJ: Termination during Probationary Period

1. At the time of your Excepted appointment on November 22, 2020, as a Staff Pharmacist, you were informed that your first year of employment would be subject to a probationary/trial period. The probationary/trial period is an important part of the hiring process and during this time, supervisors are required to study an employee's potential closely to determine whether s/he is suited for successful government work. When it becomes apparent that an employee's conduct, general character traits or capacity do not meet the requirements for satisfactory service, the supervisor is required to initiate action to separate the employee.

2. Teresa DuFresne, Chief of Pharmacy has recommended that you be terminated from your position for failure to qualify during your probationary/trial period. Your termination is due to conduct.

3. The effective date of your termination will be at 11:30am on March 23, 2021. You must properly clear the facility, turn in any government property and clear any indebtedness prior to the release of your final paycheck.

4. You will be retained in an Active duty status during the advance notice period.

5. You may seek review of this action. Such reviews include:

a) Appealing this action to the Merit Systems Protection Board (MSPB) if you allege you were discriminated against due to marital status or partisan political reasons or your removal was not effected in accordance with the procedural requirements of 5 CFR 315.805*; or

b) seeking corrective action before the U.S. Office of Special Counsel (OSC); or

c) pursuing a discrimination complaint with the Office of Resolution Management (ORM).

Continuation Question 19

An appeal, complaint, or review concerning this action may not be filed with more than one administrative body. You shall be deemed to have exercised your option to appeal this action at such time as you timely initiate action to appeal to MSPB. If you believe that this action constitutes a prohibited personnel practice under 5 U.S.C. § 2302(b), including retaliation for protected whistleblowing, you may elect to file an appeal to MSPB, or seek corrective action from OSC, and your election is based on which election you file first. If you believe that this action was taken against you for discriminatory reasons, see paragraph six of this memorandum.

6. Equal Employment Opportunity Commission (EEOC): If you believe this action is based on discrimination on the basis of race, color, religion, sex, national origin, age or disabling condition, you may file a complaint of discrimination. If you elect to file a complaint of discrimination, you may do so by contacting the Office of Resolution Management (ORM) at 1-888-566-3982. Your complaint will be processed in accordance with EEOC regulations at 29 C.F.R., Part 1614. Your initial contact with the ORM office must be done within 45 calendar days of the effective date of this action.

7. Merit Systems Protection Board (MSPB): If you appeal to the MSPB, your appeal may be submitted by mail, facsimile, by commercial overnight delivery, by electronic filing the MSPB Appeal Form (https://e-appeal.mspb.gov), or in person at any time after you receive this letter, but not later than 30 calendar days after the separation has been effected, or 30 calendar days after the date of the your receipt of this decision, whichever is later. The address to mail your appeal is Central Regional Office, 230 South Dearborn Street, 31st Floor, Chicago, IL 60604-1669. You must submit an original and one copy of both your appeal and all attachments. If you do not submit an appeal within the time set by statute, regulation, or order of a judge, it will be dismissed as untimely filed unless a good reason for the delay is shown. The judge will provide you an opportunity to show why the appeal should not be dismissed as untimely. A copy of the form is available by request if you are unable to access it at the MSPB website. Please refer to the MSPB website (www.mspb.gov) for information regarding the appeals process and procedures that must be followed. You may be represented by an attorney or other representative of your choice. If you decide to file an appeal with MSPB, you should notify the Board that the agency's point of contact for this appeal is: Leigh Ann Zuzula, Human Resources Specialist, Aleda E. Lutz VA Medical Center, 1500 Weiss Street, Saginaw, MI 48602, Phone: 989-930-8848; Fax: 989-321-4909.

8. Office of Special Counsel (OSC): If you elect to seek corrective action by the OSC's Complaints Examining Unit (OSC Appeal Form) (https://osc.gov/), your complaint will be limited to a determination as to whether the agency took one or more personnel actions against you in violation of 5 USC 2302(b) (prohibited personnel practices). This can include but is not limited to claims of reprisal for whistleblowing and/or engaging in protected activity. If you are making a claim of retaliation for engaging in one or more protected activities and OSC dismisses your claim, you may have the right to file an individual right of action (IRA) appeal to the MSPB, but such an appeal will be limited to an adjudication of whether you proved that your protected activity was a contributing factor in the effected action.

continuation Question 19

9. Whichever option you may choose to pursue regarding this action (an appeal to the MSPB, a request for corrective action to OSC, or a discrimination complaint), shall be considered an election by you to proceed under that appeal process. However, you may concurrently file a corrective action to OSC and a discrimination complaint.

10. If you have any questions concerning this matter or the rights described above, or if you need assistance or additional information, please contact Ms. Leigh Ann Zuzula, Human Resources Specialist, Aleda E. Lutz VA Medical Center, 1500 Weiss Street, Saginaw, MI 48602, Phone: 989-930-8848; Fax: 989-321-4909.

Christopher W. Cauley 204562 Digitally signed by Christopher W. Cauley 204562 Date: 2021.03.22 14:57:07 -04'00'

Chris Cauley, FACHE
Acting Medical Center Director

I certify receipt of this document.

refused to sign — 3-23-21

EMPLOYEE SIGNATURE — DATE

AFGE Representation (please circle) Present / Employee declined

[signature] — 3-23-21

AFGE REPRESENTATIVE SIGNATURE — DATE

**Subject**   Complaint

**From**   Neri Tawfiq <neri_tawfiq@yahoo.com>

**To:**   Christopher W. Cauley <christopher.cauley@va.gov>

**Date**   Jun 6, 2021 at 2:00 PM

Hello Mr. Cauley,


My livelihood as suffered greatly due to the termination for which I knew nothing about.
False accusations made against me, has cost me my GS-12 Doctor Clinical Pharmacist position.
Chief of Pharmacy Teresa Dufresne and Supervisor Jeffrey Johnson did not make me aware of my termination, before I was terminated. I am a human being, and should not be treated as if, I was less than fecal matter. I have no source of income due to the wrongful termination from pharmacy department of Aleda Lutz VA.

I just do not understand, why no one is listen to anything that, I have said. It seems to me whatever the Acting Medical Director, Chief of Staff, Supervisor of pharmacy, and others say they are totally correct. Anything that, I say is wrong. No one should get terminated from a federal position for something they knew nothing about and never occurred. It does not make any sense for me to drive all the way from Florida to Saginaw, MI just to get terminated on the 90th day of being in the veteran affairs system.

Just because, I am a mix black male does not mean, I am a violent and angry person.
It seems to me, that the Aleda Lutz Veteran affairs, is making me look as if I am a violent person.
I do cry a lot when people do me wrong, but I never retaliate. When I was a pharmacy technician, a customer grabbed my neck tie and slammed me the cash register. While he punched me in my head twice at CV's pharmacy. The store manger asked me" do you want to call the police and report a assault charge", I said no that will not be necessary. The reason for dening the store manger, is because, viewing the patient profile, I found out that he was really struggling with mental conditions. I fully understand were he was coming from, because I worked at the Florida State. Mental Hospital in Chattahoochee, FL.


Respectfully,

# CIVIL COVER SHEET

County in which action arose: 26145

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS** Dr. Neri Taufiq 26145

**(b)** County of Residence of First Listed Plaintiff *(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)* P.O. BOX 3678 Homeless Saginaw, MI 48605

**DEFENDANTS** Mr. James Hines 26145

County of Residence of First Listed Defendant *(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)* Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
110 Insurance; 120 Marine; 130 Miller Act; 140 Negotiable Instrument; 150 Recovery of Overpayment & Enforcement of Judgment; 151 Medicare Act; 152 Recovery of Defaulted Student Loans (Excludes Veterans); 153 Recovery of Overpayment of Veteran's Benefits; 160 Stockholders' Suits; 190 Other Contract; 195 Contract Product Liability; 196 Franchise

**REAL PROPERTY**
210 Land Condemnation; 220 Foreclosure; 230 Rent Lease & Ejectment; 240 Torts to Land; 245 Tort Product Liability; 290 All Other Real Property

**TORTS — PERSONAL INJURY**
310 Airplane; ☑ 315 Airplane Product Liability; ☑ 320 Assault, Libel & Slander; ☑ 330 Federal Employers' Liability; 340 Marine; 345 Marine Product Liability; ☑ 350 Motor Vehicle; ☑ 355 Motor Vehicle Product Liability; ☑ 360 Other Personal Injury; 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
365 Personal Injury - Product Liability; 367 Health Care/ Pharmaceutical Personal Injury Product Liability; 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
370 Other Fraud; 371 Truth in Lending; 380 Other Personal Property Damage; 385 Property Damage Product Liability

**CIVIL RIGHTS**
☑ 440 Other Civil Rights; 441 Voting; ☑ 442 Employment; 443 Housing/ Accommodations; 445 Amer. w/Disabilities - Employment; 446 Amer. w/Disabilities - Other; 448 Education

**PRISONER PETITIONS**
Habeas Corpus: 463 Alien Detainee; 510 Motions to Vacate Sentence; 530 General; 535 Death Penalty; Other: 540 Mandamus & Other; 550 Civil Rights; 555 Prison Condition; 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
625 Drug Related Seizure of Property 21 USC 881; 690 Other

**LABOR**
710 Fair Labor Standards Act; 720 Labor/Management Relations; 740 Railway Labor Act; 751 Family and Medical Leave Act; 790 Other Labor Litigation; 791 Employee Retirement Income Security Act

**IMMIGRATION**
462 Naturalization Application; 465 Other Immigration Actions

**BANKRUPTCY**
422 Appeal 28 USC 158; 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
820 Copyrights; 830 Patent; 835 Patent - Abbreviated New Drug Application; 840 Trademark; 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
861 HIA (1395ff); 862 Black Lung (923); 863 DIWC/DIWW (405(g)); 864 SSID Title XVI; 865 RSI (405(g))

**FEDERAL TAX SUITS**
870 Taxes (U.S. Plaintiff or Defendant); 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☑ 375 False Claims Act; 376 Qui Tam (31 USC 3729(a)); 400 State Reapportionment; 410 Antitrust; 430 Banks and Banking; 450 Commerce; 460 Deportation; 470 Racketeer Influenced and Corrupt Organizations; 480 Consumer Credit (15 USC 1681 or 1692); 485 Telephone Consumer Protection Act; 490 Cable/Sat TV; 850 Securities/Commodities/ Exchange; 890 Other Statutory Actions; 891 Agricultural Acts; 893 Environmental Matters; 895 Freedom of Information Act; 896 Arbitration; 899 Administrative Procedure Act/Review or Appeal of Agency Decision; 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

☑ 1 Original Proceeding; ☐ 2 Removed from State Court; ☐ 3 Remanded from Appellate Court; ☐ 4 Reinstated or Reopened; ☐ 5 Transferred from Another District *(specify)*; ☐ 6 Multidistrict Litigation - Transfer; ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:

Brief description of cause:

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P. **DEMAND $**

CHECK YES only if demanded in complaint: **JURY DEMAND:** ☐ Yes ☑ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE ______ SIGNATURE OF ATTORNEY OF RECORD ______

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

PURSUANT TO LOCAL RULE 83.11

1. Is this a case that has been previously dismissed?

☐ Yes
☑ No

If yes, give the following information:

Court: ______________________

Case No.: ______________________

Judge: ______________________

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)

☐ Yes
☑ No

If yes, give the following information:

Court: ______________________

Case No.: ______________________

Judge: ______________________

Notes :